Okay. May it please the court. Good afternoon. My name is Dan Polson. I am the attorney representing Tyler Bateman. And this is a direct appeal from Mr. Bateman's convictions for eight counts of making threatening statements in interstate commerce. And among the questions presented is whether Mr. Bateman is entitled to reversal of his convictions because the jury was not given an instruction as to the definition of threat. Because Mr. Bateman was prosecuted based on his words alone, the First Amendment requires that the jury be instructed as to the difference between protected and unprotected speech. So Mr. Bateman had a right under the First Amendment to have the jury informed as to the definition of a true threat under the First Amendment. Is there any Ninth Circuit case which says what you just said that we are required to give that instruction, the district court is required to give that instruction in every case? So our position is that you have to construe the elements of the offense consistent with the First Amendment. Counsel, is the answer to Judge Bennett's question no? There's no Ninth Circuit under Supreme Court precedent. We're relying primarily on Watts versus United States. That's where this instruction was derived from. And I'm not aware of any Ninth Circuit precedent that says that this is, it's not part of the model and pattern instructions. You have limited time. So that's the answer to the question. And I want to make sure we get the answer. So go right ahead, please. Okay. So the definition or the instruction proposed by the defense would have defined a true threat as a serious statement expressing an intent to injure any person as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner. I ask you to forgive me for interrupting, but that goes straight to it for me, for my scorecard. I'm trying to figure out whether there was evidence or what evidence was there in this case from which the jury could have decided that your client did not intend to issue a true threat. Okay. So we think that this would have been a critical instruction in part because of the testimony of Mr. Bateman's parents who were named as victims on counts one through five. On that point, you've briefed that thoroughly, what their testimony was. And I know we've all read that testimony. So let me just ask you, is there anything in the record? Because I looked. Anything in the record would indicate that his parents told him that they didn't take his threats seriously? Well, we've established that every time Mr. Bateman has made similar statements, violent statements to his parents, they haven't reacted. Right. Except Mr. Paulson, the issue is his, under your theory, I think the issue is his defendant's subjective state of mind, not his parents. So I'm just trying to get at what evidence there is that the jury could have relied upon to decide that he did not subjectively intend to issue a true threat, please. Well, let's take a step back and point out that there's two components. You're touching on the aloneness question. The burden on the government is to prove that the defendant made a statement with knowledge. What I'm suggesting is that I don't have a problem with the objective component. That's why I'm trying to probe the subjective component. I'm not trying to argue with you about the state of the law. I'm trying to give you the benefit of the doubt and assume that the law is as your brief suggests, which is I understand that both components are required. I'm trying to find evidence that the jury could have relied upon to decide that Mr. Bateman did not intend, subjectively intend to issue a true threat. Right. And what I'm saying is that the defense instruction isn't going, it touches, I think, on the subjective component in the sense that it clarifies for the jury that in order to determine if a statement is a true threat, you look at the surrounding context, including the reaction of the listeners and surrounding events. So surrounding events, what's the pattern here? What do we know about Mr. Bateman and his relationship with his family? The context is that Mr. Bateman has a history of making these kinds of verbal outbursts. But counsel, the jury instruction that the court did give said that the jury had to find either the defendant transmitted the communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat. I'm having trouble seeing evidence in the record that wouldn't have easily satisfied both of those. And I'd like to hear, like Judge Kristen, what evidence in the record supports that neither of those were, that either of those were absent here. Okay. So a couple of things. Um, the standard is that Mr. Bateman has to act with knowledge that the communication would be viewed as a threat by the listener. And that's from Malonis, by the listener. Who is the audience in this case? Mr. Bateman's parents. But if you look at the instructions, um, that were given to the jury and counsel right there, I've asked now twice, forgive me, but did his parents, is there any evidence that his parents ever told him that they had not viewed, you know, given this history of these prior threats, prior statements that they'd never taken themselves, never taken them seriously or never felt threatened by them? Is that in this record? I think it's sort of implied by the fact that they, they testified that they never taken them seriously. And I think you can infer that they never, I'm not sure if they ever had a conversation with him that said, you know, well, look at the text messages themselves. Look at the way his father responds, right? In, uh, you know, Mr. Bateman says, I'm going to shoot you straight up. And his dad's response is, well, you're really making me want to help you right about now. You can tell from this, that this is a route. This is not, uh, um, an isolated interaction that they are accustomed to having their son make these statements. So I'm not sure. Mr. Paulson, let me, let me ask you this. The, the, the parents testified to, they told the jury, they didn't take it seriously, right? They told the jury, they didn't think it was a threat. And then the jury was never told what a threat is. Isn't that the problem? He, how could they decide whether what he transmitted was a threat when nobody told him what a threat was? Um, I think that's one way of looking at it, but I guess if you look at case, like, here's the thing, if you look at Planned Parenthood, that's a case that I think is sort of the mirror image of this case. What's the issue in Planned Parenthood, right? That are calling out abortion providers. Every time these posters come out, every time they're disseminated, they are accompanied by acts of violence against abortion providers. That's the pattern. The posters on their face don't have any explicit threats, right? They don't say kill this person, but there's a pattern there. So this is sort of the flip side. Mr. Bateman makes these violent, provocative statements. He talks about how he beat them up with hammers and sliced them to ribbons. And he never, he never follows through on any of that. I mean, they have, uh, you know, according to Michael Bateman, he's been exposed to these kinds of statements thousands of times and, uh, his son has never followed through on them. So what does that tell? But counsel, I appreciate your analogy and the flip side to the Planned Parenthood case, if that's all there were in the record, but I'm looking at SCR 733, 736, and 737, where he wrote in these texts, you think it's just talk. The best part, you aren't even paying attention to this and that's all going to come true. And then the final statement, you think it's funny. Laugh it off as a joke. We'll see how funny it is when I'm cutting you to ribbons. Right. And he also says, this isn't the first time I'd have killed someone before. These are fanciful statements, judge. And the testimony I think is unequivocal that Mr. Bateman's parents did not take these statements as serious expressions of intent to harm. And that's the defense instruction. That's the instruction. So counsel, even, even if that were to somehow work for you, um, on the counts involving the parents, how does that work for you on the counts involving the police and the chief? So, yeah. And so we, there's a couple of problems. Um, one is that, uh, and you're, right. That counts one through five involve text messages that Mr. Bateman sent to his parents. Um, and, uh, a former employer, Don Tulin, and then the other counts related to messages that were sent to APD, um, and then officer Gawkey. Um, we, I think have kind of a harder argument to make as far as harmless error, no question about it. But at the same time, the statements that were made to APD were pretty vague. They were fanciful. They were descriptions about walking into a building with an AR-15. We don't know where this building is. We don't know when this is going to happen. We know that Mr. Bateman... You won't stop me. I am going to hurt a lot of dirty cops and their families. I am going to hurt a lot of people and I am going to walk into a building with an AR-15. I am going to poison them with ricin. That doesn't strike me as nonspecific or fanciful. Well, I'd say that, you know... Did you want to, um, leave any time for a vote? Yeah, I will reserve 30 seconds for a vote. Thank you. No problem. You can plan accordingly. We'll put two minutes on the clock when you come back because we took an awful lot of your time with questions. So, um, we'll hear from opposing counsel, please. Uh, good morning and good afternoon. May it please the court, Jonas Walker for the United States. In Alonis, Chief Justice Roberts held that a victim who receives a letter saying, quote, I'm going to kill you, unquote, has received a threat. In this case, the evidence showed that Bateman sent eight messages in interstate commerce that contained threats. The jury heard all of the circumstances. Could you get a little closer to your microphone, please? I'm having trouble hearing you. Yes, your honor. I apologize. Uh, the jury heard all of the evidence surrounding the found the defendant guilty. You didn't enlighten those favors. But nobody told, but nobody told them what the definition of a threat was. Uh, your honor, there was no need to give the jury that instruction because that's a true... Why do so many other circuits and so many district courts around the country do it? Don't they do it because the Supreme Court has said they, that it's, that you have to make this distinction between a true threat and idle I can't speak to, uh, a pattern committee's, uh, state of mind in another circuit. But what I, what I can say is that in looking at the instructions that Bateman proposed before the district court, he seems to be using patterns that relate to pre-Alonis decisions, which have to do... No, but he goes on to say, he goes on to say, at least give an instruction that explains what a true threat is. Look at, uh, SCR, um, 25 through 27. He backs off the original request, but he says, but please at least give an instruction that explains a true threat. And he cites the Bagdasarian case and he cites the Stewart case. And he provides examples from other circuits of instructions that are given that explains what a objective language of that, those instructions, it still says that. And, um, so he preserved that and he asked for it, um, in writing and again, orally, he didn't wave it back away from that. Your Honor, if I may address that specifically, the government respectfully disagrees. And if I may point the court directly to the language that the defendant preserved, uh, at SCR, uh, let's the defendant requested, um, uh, the definition that that's his first request that was later withdrawn at SCR 59 after the government pointed out that he was requesting something that actually would have been error because it lowered the government standard of proof. But did the government, did the government argue that the district court shouldn't not provide a definition for the jury? Post Stewart? Your Honor, the government requested the pattern, which, uh, in the ninth circuit does not include a definition of threat. But the pattern jury instructions don't, don't mean a thing. Somebody wrote them based on their reading of the case law. Um, the objection the government made had to do with, um, the intent aspect of it. It didn't have to do with the definition of threat. Your Honor, if I may address that specifically, I want to back up to the original question, uh, Judge Friedman, if I may. And that was, uh, if, if I may point out at SCR 59, that's what the defendant, that's what Bateman preserved before the district court. And it's important to note, he did not request a definition with the word true in it. He said he wanted a quote unquote threat. And then he goes on to ask for a definition that talks about an exaggeration. And that's simply a misstatement of the law because an exaggeration. All right, so strike, so the district court can strike exaggeration and leave mere idle or careless talk. Uh, Your Honor, that's not what the defense requested. Well, district judges have a lot of discretion to write instructions, to refashion instructions, to reframe instructions. And based on, uh, Black, Bagdasarian, Stewart, Sutcliffe, why didn't the district court do it when asked? There are lots of other cases like in Sutcliffe, for example, where there was no request for instruction. Here, there was a request. He never retreated from his request. Uh, Your Honor, again, if, if, if I may, at, uh, SCR, uh, 59, I just want to make sure the court did see this. Uh, Bateman's counsel before wrote, he believes that the government is correct at, correct at docket 65, where the government argues the proposed definition of threat is flawed. So then, then, then he made a, another proposal, the second proposal. In that one, that's when he uses the term exaggeration, which is simply flawed. As to Your Honor's question about the mere idle or careless talk, again, from our perspective, uh, that's, that's clearly taken care of in the authority he cited. And this does take a moment to explain, but if I may direct the court specifically to, um, exhibit A, which starts on supplemental excerpt of record 29. That's what the court was referring to with the, with the patterns from the other circuits. So at SCR 29, below, Bateman requested a pattern instruction from a wrong statute. That was exhibit A. Exhibit B was an eighth circuit comparison. And Judge Friedman, if I may, this specifically answers Your Honor's question. If I may direct the court to SCR 33, that's the end of the pattern instruction on the eighth circuit. The eighth circuit specific, the eighth circuit pattern specifically says, requiring proof of purpose or knowledge to satisfy the statute's mince ray requirements, allays any potential first amendment concerns in those circuits, like the eighth, where circuit precedent does not already require proof of the defendant's intent, unquote. So in other words, I'm sorry, what are you reading from? Your Honor, that's a supplemental excerpt of record page 33, which is exhibit B to the defendant's second requested jury instruction, which begins on SCR 31. And so if I may just, if I may just reorient the court, Your Honor was asking the government questions as to the preservation. And Your Honor was asking specifically about other circuits. And it's important to point out here that even taking Bateman's authority at face value, which he presented to the district court here, he failed to acknowledge that when this district court judge gave the instruction consistent with Alonis, this district court judge was directly satisfying what he was asking for by referring to the eighth circuit comparison at exhibit B. Third, Your Honor, exhibit C, he goes to the tenth circuit pattern instruction. But it's striking that Bateman omitted the very last sentence of that instruction, which was, quote, it is not necessary that the defendant intended or had the ability to carry out the threat. So among the reasons why the district court was correct in rejecting Bateman's second proposed instruction was because he was actually twice at exhibits A and D. Yeah, but the counsel on that point, I don't really understand it. I mean, on SCR 59, he's saying, give this threat definition either in the elements or as a single standalone definition. And that wouldn't have required the court to eliminate the part of the model jury instruction that the government doesn't need to prove that the defendant intended to carry that out. So I don't really understand your point on the defendant needed to carry that out part, which was going to be in the instruction no matter what, right? Your Honor, I was simply attempting to address Judge Friedman's question as to what was wrong with Bateman's presentation to the district court relying on circuit, other circuits patterns. But Judge Bennett, if I may directly address your question, looking at the definition he proposed, the first problem, again, is the exaggeration, as we talked about in that brief. In order to whether someone exaggerated, a juror has to compare two things. One, the true thing, and two, the description. But the problem is Bateman never asked the judge to find, well, exaggeration of what? Well, the clear implication of this instruction would be first the jury has to know what is his intent? Does he actually intend to shoot these people, poison them with his words, and measure the difference between his intent to commit murder versus the words he spoke? And under this definition, if I may, and Judge Friedman, I believe this answers your question as well, the most important thing about his second instruction is it's wrong because it draws a line between exaggerations and threats. It says a threat is something other than an he actually intended to murder these people. No, what the government had to prove is that he transmitted a communication. And that communication's second element, that it contained a threat, an undefined thing. Third, that he transmitted it for the purpose of issuing a threat, an undefined thing. And fourth, the government does not need to prove that the regardless of the, you're trying to make a, you know, how many angels can dance on the head of a pin? Let's cut out this word, but include that word. There was no definition. And viewing his request as he seemingly intended it in his fallback position or his fallback to his fallback position, which he never withdrew, was please give me some definition of threat. And the judge said no. They never got to debating whether we excise the word exaggerate, but leave these other words. How does the jury know with respect to counts one through five, in view of all the testimony from his parents, whether the thing they're being asked to decide was a threat or something else? You're under reasonable doubt. Yes, your honor, if I may, and I see him over time, if I may answer the question. Go ahead. First, your honor, jury instructions need not define common terms that are readily understandable to the jury. That's United States v. Young at 1010. The citation is 458 F3rd 998. Second, the jury heard all of the circumstances. The jury knew that Bateman was not performing an act in a play. The jury knew that he was not playing a childhood game with a sibling in which they pretended to threaten each other. The jury understood that Bateman wanted his dad to buy him a plane ticket, and they knew that his dad said no. And they watched almost in real time through these threats as the defendant first began insulting his father, and then that ultimately grew to explicit threats. As Justice Roberts said, when a person gets a letter that says, I'm going to kill you, that's a threat. When Tyler Bateman wrote in count one, I must shoot you, straight up, that's a threat. That's a term of common meaning. A jury can look at those words and understand that's not a love letter, that's not a request to order takeout food. That is a threat. And so the jury didn't need an instruction on that. And furthermore, if I may... Counsel? Yes, Your Honor. Please wrap up. You're well over time. Yes, Your Honor. Ultimately, Judge Friedman, from the government's perspective, there was no error, but even if there were an error, it was harmless. Certainly, Bateman had no right to have the district court judge give him an incorrect statement of the law, which he requested, which was that an exaggeration is not a threat. Thank you, counsel. Thank you. You're well over time, forgive me, but you're well over time. We'll have two minutes on the clock, please, for Mr. Bateman's counsel. So, I disagree with the government's argument that this is a misstatement of law. The definition of a true threat under Virginia v. Black, Watts v. United States, RAV v. St. Paul, is a true threat is a statement that conveys a serious expression of intent to counsel. If we decide this was error, if we decide it was error to give no definition at all, why isn't the error harmless here? Because, again, I think the testimony by Mr. Bateman's parents was unequivocal that they were not threatened. They were the intended. They were the listeners. They were the persons to whom the statements were directed. If they weren't threatened, and if they... Well, that's true. That's not true of all the counts, but... But certainly with respect to those, the messages that were the subject accounts one through five, and I think the purpose of the defense instruction was to ask the jury to look at context, to look at the surrounding circumstances. Without that instruction, the jury is looking at the statements in the abstract, and we would object to the government's argument that the statement, I want to kill you, by itself is invariably a threat. That's not the First Amendment. A statement is a threat based on the surrounding circumstances, the context. So, what do we do about the comments that were read earlier in the record where, I mean, there's so many messages, but some of them, of course, where he indicated these are not jokes. What about those comments? What do we do with that? Again, these are not uncommon statements for Mr. Bateman, okay? He said, I'm serious, and then has never followed through on any of these kinds of violent fantasies. So, I mean, the jury should have been given an opportunity to consider the law, and decide if the law applied to these facts amounted to a true threat. They were not given that chance. So, for that reason, we're urging the court to reverse. And with that, I will stand down. Thank you both for your argument. We'll take this case under advisement and move on to the
judges: Christen, Friedman, Bennett